```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
HELEN I. GREEN, as Executrix of      : 07 Civ. 3141 (JCF)
the Estate of MICHAEL H. LEVY, and   :
HELEN I. GREEN, Individually,        :    MEMORANDUM
                                     :    AND  ORDER
              Plaintiffs,            :
                                     :
         v.                          :
                                     :
ADVANCED CARDIOVASCULAR IMAGING,     :
                                     :
              Defendant.             :
                                     :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This is a medical malpractice action brought by Helen I. Green, on her own behalf and as Executrix of the Estate of Michael H. Levy, against Advanced Cardiovascular Imaging. The parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c), and I dismissed the case on March 10, 2009 for failure to prosecute. The plaintiff now moves to vacate the order dismissing the action and to restore the case to active status pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure. For the reasons that follow, the plaintiff's motion is granted.

Background

A.   Facts

On January 20, 2006, Advanced Cardiovascular Imaging performed medical testing on the decedent, Michael H. Levy, at its office in Manhattan. (Complaint, ¶ 9; Answer, ¶ 5). The Complaint alleges

1

that the defendant negligently performed these tests, causing physical, psychological, and emotional injuries to Mr. Levy; pecuniary and economic loss to his estate and dependents; and psychological and emotional injury, including loss of consortium, to his wife, Helen I. Green.  (Complaint, ¶¶ 12, 15, 18).  When Mr. Levy passed away, Ms. Green was appointed Executrix of his estate.

    B.   Procedural History

Ms. Green filed this suit on April 19, 2007.  A pretrial conference was held on March 3, 2008, at which discovery was scheduled to be completed by May 30, 2008 and the pretrial order deadline was set for June 30, 2008.  Counsel for the defendant requested, and I granted, an extension of the discovery schedule. Fact discovery was then scheduled to be completed by September 15, 2008, expert reports exchanged by October 15, 2008, and expert discovery finalized by November 14, 2008.  The pretrial order deadline was extended to December 15, 2008.

On February 4, 2009, having not received the joint pretrial order, I ordered the plaintiff to show cause by February 20, 2009 why the case should not be dismissed for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.  When the plaintiff failed to respond, I dismissed the case sua sponte on March 10, 2009.  On May 27, 2009, the plaintiff filed the instant motion to vacate the order of dismissal pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure on grounds of excusable

neglect.

Between the time the complaint was filed and the date the case was dismissed, Ira C. Podlofsky, counsel for the plaintiff, experienced both personal and professional upheaval, causing him to neglect Ms. Green's case for much of that period.  First, Mr. Podlofsky and his wife, Jan Orange, began divorce proceedings. (Declaration of Ira C. Podlofsky dated May 27, 2009 ("Podlofsky Decl."), ¶ 4).  Ms. Orange was also Mr. Podlofsky's law partner. (Podlofsky Decl., ¶ 4).  As a result of the financial disruptions caused by his separation from Ms. Orange, Mr. Podlofsky was forced to lay off two attorneys and the administrative manager from his law practice, leaving him as the sole attorney handling the practice.  (Affirmation of Ira C. Podlofsky dated July 31, 2009 ("Podlofsky Reply Aff."), ¶ 9; Podlofsky Decl., ¶ 5).  Because Ms. Orange is not now employed, and has not been for some time, Mr. Podlofsky is providing the financial support for their separate households and their two daughters.  (Podlofsky Aff., ¶¶ 9-10). Mr. Podlofsky has indicated that he has withdrawn from Ms. Green's case and that the firm of Collopy & Carlucci will handle the matter going forward if it is reopened.  (Letter of Ira C. Podlofsky dated July 10, 2009).

Discussion

A. Motions Under Rule 60(b)

The plaintiff has requested, pursuant to Rule 60(b) of the

Federal Rules of Civil Procedure, that the dismissal of her case be set aside.  Rule 60(b) allows courts to relieve parties from final judgments or orders for any of six reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud . . ., misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

"'A motion for relief under Rule 60(b) is addressed to the sound discretion of the court.'"  Williams v. New York City Department of Corrections, 219 F.R.D. 78, 83 (S.D.N.Y. 2003) (quoting Velez v. Vassallo, 203 F. Supp. 2d 312, 333 (S.D.N.Y. 2002).  In deciding whether to grant relief, a court must balance the interest in finality against the litigants' interest in having their claims decided on the merits.  Kotlicky v. United States Fidelity & Guaranty Co., 817 F.2d 6, 9 (2d Cir. 1987) (citing 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2857 (1st ed. 1973)).  Though final judgments should not be "lightly reopened," Rule 60(b) should nonetheless be

4

"broadly construed" in order to serve the interests of justice. Canini v. United States Department of Justice Federal Bureau of Prisons, No. 04 Civ. 9049, 2008 WL 818696, at *2 (S.D.N.Y. March 26, 2008).

The burden of demonstrating that a judgment should be vacated rests with the moving party.  Williams, 219 F.R.D. at 84 (citing State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, 246 F. Supp. 2d 231, 248 (S.D.N.Y. 2002)).  In order to meet this burden, the Second Circuit generally requires that a movant: (1) support its motion with highly convincing evidence; (2) show good cause for its failure to act sooner; and (3) prove that granting the motion will not impose any undue hardship on the other parties. Canini, 2008 WL 818696, at *2 (citing Kotlicky, 817 F.2d at 9). Because the latter two requirements overlap with the considerations for evaluating whether a movant has demonstrated excusable neglect under 60(b)(1), I will first analyze the excusable neglect factors.

B.  Specific Requirements Under Rule 60(b)(1)

As noted above, Rule 60(b)(1) provides that relief may be justified on the basis of "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  To determine whether to grant relief for excusable neglect, courts must "tak[e] account of all relevant circumstances surrounding the party's omission."  Pioneer Investment Services Co. v. Brunswick Associates, L.P., 507 U.S. 380, 395 (1993).  Although Pioneer was

a bankruptcy case dealing with courts' powers to enlarge filing deadlines under the Federal Rules of Bankruptcy Procedure, the Second Circuit has applied Pioneer's excusable neglect test to motions made under Rule 60(b) of the Federal Rules of Civil Procedure. Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 249-50 (2d Cir. 1997) (citing United States v. Hooper, 9 F.3d 257, 259 (2d Cir. 1993)). Pioneer instructs courts to consider the following factors: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. Pioneer, 507 U.S. at 395; Canini, 2008 WL 818696, at *3.

      1.   Prejudice to the Defendant

The plaintiff has met her burden of showing that there will be little danger of prejudice to the defendant if this case is reopened. The risk of prejudice to the nonmoving party is greatest where the moving party has allowed so much time to elapse that it would be difficult to conduct discovery or otherwise proceed with the case. See Canini, 2008 WL 818696, at *4 (finding prejudice where the incident at issue occurred over four years earlier and no discovery had taken place); Williams, 219 F.R.D. at 86 (reopening case arising out of six year old events would prejudice nonmoving party because no discovery had yet occurred). Short delays

6

generally do not prejudice the nonmoving party.  For instance, the Second Circuit has observed that "it is difficult to imagine what possible undue prejudice might arise from a six-month delay . . . in comparison to the substantial injustice that the plaintiffs suffer through dismissal."  Foley v. United States, 645 F.2d 155, 157 (2d Cir. 1981).

Here, Ms. Green filed her motion to vacate the dismissal order less than three months after the order was issued.  Advanced Cardiovascular Imaging, unlike the defendants in Canini and Williams, is not facing a delay that would impact its ability to conduct discovery.  Discovery is well under way, and the plaintiff has represented that it is near completion.  (Podlofsky Reply Aff., ¶ 13).  Furthermore, the defendant has identified no specific prejudice it would suffer if the case is reopened.

### 2.  Length of the Delay

Because the length of delay at issue is slight, there is unlikely to be any significant impact on judicial proceedings.  See Foley, 645 F.2d at 157 (six-month delay would not interfere with the judicial process); cf. Canini, 2008 WL 818696, at *4 (deeming a sixteen-month delay before dismissal followed by a one-year delay after dismissal unreasonable).  As noted above, less than three months elapsed from the date of the dismissal order before the plaintiff moved to vacate it, and the order itself was issued less than three months after the pretrial order should have been filed.

3.   <u>Reasons for the Delay</u>

The Supreme Court in <u>Pioneer</u> recognized that there exists "a range of possible explanations for a party's failure to comply with a court-ordered filing deadline," from acts of God at one end to conscious disregard at the other.   <u>Pioneer</u>, 507 U.S. at 387-88. <u>Pioneer</u>'s central holding was that the term "excusable neglect" encompasses not only those circumstances beyond a party's control, but is an "elastic concept" that includes also omissions due to carelessness.   <u>Id.</u> at 388-90.

When a party's negligence approaches willfulness, it is unlikely to be excused.   <u>See</u> <u>Kuntz v. Pardo</u>, 160 B.R. 35, 39-40 (S.D.N.Y. 1993) (<u>pro</u> <u>se</u> plaintiff's repeated failure to comply with court rules, procedures, and deadlines resulted from "conscious disregard" and was therefore inexcusable).   In <u>Canfield</u>, the court found plaintiff's counsel's participation in his own bid for political office insufficient to justify his neglect of a clear court rule, which was made known to him in writing by opposing counsel.   127 F.3d at 249-51.   And in <u>Canini</u>, counsel's failure to delegate his cases to other associates while he participated in a trial constituted inexcusable neglect.   2008 WL 818696, at *5. Conversely, when a deadline is missed for reasons out of counsel's control, courts will find the neglect excusable.   <u>See</u> <u>Kotlicky</u>, 817 F.2d at 9 (counsel's proof that he did not receive notice of a deposition was sufficient to excuse his absence); <u>Foley</u>, 645 F.2d

at 157 (neglect due to the mistakes of others as well as "logistical difficulties" was excusable). Thus, courts in this circuit draw a line between excusable and inexcusable neglect based in part on the ability of the plaintiff or her counsel to control the circumstances that led to the breakdown.[1]

While plaintiff's counsel here found himself in circumstances that were not completely outside his control, neither did he willfully shirk his duties. Mr. Podlofsky failed to act for reasons falling somewhere between the extremes identified in Pioneer. Though he was careless, his neglect is nonetheless excusable under the Supreme Court's definition of that term. The lawyers in Canfield and Canini failed to plan ahead for foreseeable distractions from their practices. Mr. Podlofsky, on the other hand, found himself forced to handle on his own what was once a multi-lawyer practice. His overwhelming work schedule resulted from his divorce from his wife and law partner, which forced him to lay off staff at his law firm in order to support his family. (Podlofsky Decl., ¶ 5). While it is arguable that Mr. Podlofsky could have taken steps to better handle Ms. Green's case, the circumstances causing him to neglect it were not fully within his control and therefore favor a finding of excusable neglect.

---

[1] "Although some of the cases relied upon here pre-date Pioneer, they are nonetheless consistent with its holding, which resolved a split among the Courts of Appeals over the meaning of "excusable neglect" in favor of a broad interpretation of that term, allowing relief for omissions caused by carelessness.

4.   <u>Whether Movant Acted in Good Faith</u>

Finally, there is no evidence that Mr. Podlofsky acted maliciously.   An attorney who makes no effort whatsoever to prosecute a case displays bad faith.   <u>See</u> <u>Canini</u>, 2008 WL 818696, at \*5-6.   So too does counsel who misses multiple deadlines and who files meritless appeals but fails to prosecute them.   <u>Kuntz</u>, 160 B.R. at 39-40.   Here, Mr. Podlofsky did not neglect this case altogether, nor did he engage in sharp practices.   Rather, his conduct, while negligent, does not evince bad faith.

<u>Conclusion</u>

After consideration of each of the relevant factors, I find that the plaintiff has met her burden of producing highly convincing evidence of excusable neglect.   Accordingly, her motion to vacate the order of dismissal is granted.   New counsel for the plaintiff shall file a notice of appearance by October 15, 2009. All fact discovery shall be completed by November 30, 2009, expert reports shall be exchanged by December 15, 2009, and expert discovery completed by January 29, 2010.   The pretrial order shall be submitted by February 26, 2010.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
        September 30, 2009

10

Copies mailed this date:

Ira C. Podlofsky, Esq.
98 Cutter Mill Road
Suite 251-S
Great Neck, New York 11021

James A. Pannone, Esq.
Morris Duffy Alonso & Faley
2 Rector Street - 22nd Floor
New York, New York 10006

11